EMARD DANOFF PORT TAMULSKI & PAETZOLD LLP
James J. Tamulski (State Bar #64880)
Jared A. Washkowitz (State Bar #226211)
49 Stevenson Street, Suite 400
San Francisco, CA  94105
Telephone:      (415) 227-9455
Facsimile:      (415) 227-4255
E-Mail:         jtamulski@edptlaw.com
                jwashkowitz@edptlaw.com

Attorneys for Defendants REDERIET OTTO
DANIELSEN, and K.S. ARIES SHIPPING

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| LORI WADE, individually and as Personal Representative  of PAUL ALAN WADE, Deceased,<br><br>       Plaintiff,<br><br>   vs.<br>TSCHUDI SHIPPING COMPANY, A.S., REDERIET OTTO DANIELSEN, ARIES MARITIME TRANSPORT, LTD., FIRST BALTIC SHIP MANAGMENT, A.S.<br><br>      Defendants. | Case No.:  C 07 5487  CW<br><br>**DEFENDANTS REDERIET OTTO DANIELSEN AND K.S. ARIES SHIPPING'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL PLAINITFF TO APPEAR FOR DEPOSITION AND TO SERVE FURTHER RESPONSES TO DEFENDANTS' REQUEST FOR PRODUCTION SET ONE, AND REQUEST FOR MONETARY SANCTIONS**<br><br>DATE:    TO BE SET<br>TIME:    TO BE SET<br>PLACE:  TO BE SET |

Memorandum of Points and Authorities
Case No.:  C 07 5487
G:\45100.011 EVA DANIELSEN\Discovery\MOTION TO COMPEL\P&A.doc

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA  94105

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................2

II.   FACTUAL BACKGROUND ................................................................................3

III.  LEGAL ARGUMENT...........................................................................................4

    A.  Plaintiff Should Be Compelled To Appear For Deposition ....................................4

    B.  Plaintiff Should Be Compelled To Serve Further Responses To Defendants
       Request For Production, Set One ............................................................................5

    C.  Defendants Should Be Awarded Monetary Sanctions Against Plaintiffs For All ....
       Expenses Incurred In Bringing This Motion ............................................................14

IV.  CONCLUSION ...................................................................................................16

F'MARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

i

# TABLE OF AUTHORITIES

**Cases**

*Domingo Angag, et al. v. M/V FAREEAST TRADER*, *in rem, et al.*,
  1989 AMC 2721 (U.S.D.C., S.D. Texas 1989) .........................................................................5

**Statutes**

Rule 26(d) of the Federal Rules of Civil Procedure...................................................................4

Rule 26(b)(2) of the Federal Rules of Civil Procedure ..............................................................5

Rule 30(a)(2)(C) of the Federal Rules of Civil Procedure..........................................................5

Rule 37 of the Federal Rules of Civil Procedure .....................................................................14

Local Rule 37-3............................................................................................................................14

Rule 5 of COLREGS ....................................................................................................................7

Rule 6 of COLREGS ....................................................................................................................7

Rule 7 of COLREGS ....................................................................................................................8

Rule 8 of COLREGS ....................................................................................................................9

Rule 19 of COLREGS .................................................................................................................10

Rule 35 of COLREGS .................................................................................................................10

Cal. Evidence Code § 250...........................................................................................................6

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

i

1

EMARD DANOFF PORT TAMULSKI & PAETZOLD LLP
James J. Tamulski (State Bar #64880)

2

Jared A. Washkowitz (State Bar #226211)
49 Stevenson Street, Suite 400

3

San Francisco, CA  94105
Telephone:    (415) 227-9455

4

Facsimile:    (415) 227-4255
E-Mail:        jtamulski@edptlaw.com

5

              jwashkowitz@edptlaw.com

6

Attorneys for Defendants REDERIET OTTO
DANIELSEN, and K.S. ARIES SHIPPING

7

8

9

UNITED STATES DISTRICT COURT

10

NORTHERN DISTRICT OF CALIFORNIA

11

SAN FRANCISCO DIVISION

12

13

LORI WADE, individually and as Personal
Representative  of PAUL ALAN WADE,

14

Deceased,

15

                    Plaintiff,

16

                    vs.
TSCHUDI SHIPPING COMPANY, A.S.,

17

REDERIET OTTO DANIELSEN, ARIES
MARITIME TRANSPORT, LTD., FIRST

18

BALTIC SHIP MANAGMENT, A.S.

19

                    Defendants.

Case No.:  C 07 5487  CW

**DEFENDANTS REDERIET OTTO
DANIELSEN AND K.S. ARIES
SHIPPING'S MEMORANDUM OF
POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO COMPEL
PLAINITFF TO APPEAR FOR
DEPOSITION AND TO SERVE
FURTHER RESPONSES TO
DEFENDANTS' REQUEST FOR
PRODUCTION SET ONE, AND
REQUEST FOR MONETARY
SANCTIONS**

DATE:   TO BE SET
TIME:   TO BE SET
PLACE:  TO BE SET

20

21

22

23

Defendants REDERIET OTTO DANIELSEN (herein "REDERIET") and K.S. ARIES

24

SHIPPING (herein "ARIES") (herein collectively "Defendants") hereby file their Motion to

25

Compel Plaintiff to Appear For Deposition and To Serve Further Responses to Defendants'

26

Request for Production Set One, and Request for Monetary Sanctions, as follows:

27

28

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

- 1 -

Memorandum of Points and Authorities
Case No.: C 07 5487
G:\45100.011 EVA DANIELSEN\Discovery\MOTION TO COMPEL\P&A.doc

I.    **INTRODUCTION**

Plaintiff is the personal representative of a deceased fisherman (herein 'the decedent'). Plaintiff alleges that the decedent's death was caused by a collision between the fishing vessel operated by the decedent and the Defendants' vessel, the EVA DANIELSEN, in waters off the coast of California.  By this motion, Defendants seek to compel Plaintiff to appear for deposition and to serve further responses to Defendants' Request for Production, Set One.

With respect to the deposition, Defendants' have duly noticed Plaintiff's deposition several times.  However, Plaintiff's counsel refuses to produce Plaintiff for deposition unless Defendants first guarantee that the crewmembers of the EVA DANIELSEN will not testify at trial without first agreeing to be deposed.  Defendants cannot provide that guarantee, as those individuals are no longer employed by or under the control of Defendants.  Further, Defendants no longer have a contract with the crewing company that supplied the crew for the EVA DANIELSEN.  Plaintiff's counsel's conditioning of the deposition of his client on <u>any</u> factor is improper because Defendants have already disclosed all available information regarding the former crewmembers to Plaintiff.  Moreover, since the former crewmembers are beyond Defendants' control, Defendants cannot guarantee that Plaintiff will be able to depose them.  In addition, the federal rules do not allow Plaintiff to prevent Defendants' from deposing a party simply because Plaintiff is unable to locate and depose non-party witnesses who are not under Defendants' control.  Defendants have attempted to informally resolve this issue, but Plaintiff's counsel still has only offered to produce Plaintiff for deposition if the above unreasonable conditions are met.

With respect to Defendants' Request for Production Nos. 1, 11-19, and 21, these requests asked Plaintiff to produce all documents supporting her responses to various interrogatories,

EMARD DANOFF PORT
IAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

Memorandum of Points and Authorities
Case No.: C 07 5487
G:\45100.011 EVA DANIELSEN\Discovery\MOTION TO COMPEL\P&A.doc

many of which refer to 'the available evidence' as supporting Plaintiff's claims. However, Plaintiff has not produced or identified the 'available evidence' referenced in her interrogatory responses. Defendants have sent numerous meet and confer letters to Plaintiff's counsel requesting further responses, but to not avail.

Finally, Defendants seek monetary sanctions in the amount set forth in the Declaration of Jared A. Washkowitz, since Plaintiff has forced Defendants to file a motion to obtain discovery that they are clearly entitled to pursue.

## II.    FACTUAL BACKGROUND

Plaintiff seeks damages arising from the death of the decedent, Paul Wade, in waters off the coast of Point Reyes on July 13, 2007. See Declaration of Jared A. Washkowitz. Plaintiff alleges that the decedent's death was caused by a collision between the decedent's fishing vessel and Defendants' cargo vessel EVA DANIELSEN. Id. Plaintiff is the decedent's widow and personal representative, and Defendants ARIES and REDERIET are the ship owner and managing ship owner of the EVA DANIELSEN, respectively. Id.

Plaintiff's First Amended Complaint was filed on October 29, 2007, and Defendants filed their Answer on January 28, 2008. Id. Trial is set for May 4, 2009. Id.

With regard to the deposition of Plaintiff, Defendants originally noticed Plaintiff's deposition for May 28, 2008. Id. At the request of Plaintiff's counsel, Defendants agreed to postpone the deposition so Plaintiff could have more time to respond to Defendants' written discovery. Id. After Plaintiff responded to the discovery Defendants re-noticed Plaintiff's deposition, this time for June 10, 2008. Id. Plaintiff's counsel subsequently advised that Plaintiff would not appear for this deposition until Defendants provided a "commitment" that plaintiff would be able to depose the captain and crew of the EVA DANIELSEN. Id. In a series

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

Memorandum of Points and Authorities
Case No.: C 07 5487
G:\45100.011 EVA DANIELSEN\Discovery\MOTION TO COMPEL\P&A.doc

of subsequent correspondence, Defendants informed Plaintiff's counsel that all available information regarding the captain and crew had already been disclosed (contact information was provided for the crewing company that was responsible for providing the captain and crew), and that the captain and crew were no longer employed by Defendants or under their control. Id. Nevertheless, Plaintiff's counsel still refuses to produce Plaintiff for deposition unless Defendants guarantee that Plaintiff could depose the captain and crew if they were to be called at trial. Defendants simply cannot provide this guarantee since they have no control over the crew, and no contractual relationship with the company that provided that crew. Id.

With regard to Plaintiff's response to Defendant's Request for Production Set One, Defendants served the Request for Production on April 15, 2008. Id. Plaintiff served responses on June 2, 2008. Id. Many of the requests ask Plaintiff to produce all documents that support Plaintiff's responses to Defendants' interrogatories. Id. These interrogatories requested Plaintiff to state all facts supporting her various claims. Id. Many of Plaintiff's interrogatory responses refer to the 'available evidence' as supporting her claims. Id. However, despite the fact that Plaintiff has indicated that there is available evidence to support her claims, she has failed to produce this evidence in response to Defendants' requests. Id.

### III.    LEGAL ARGUMENT

#### A.    Plaintiff Should Be Compelled To Appear For Deposition

It is improper for Plaintiff to purposefully delay Defendants' right to conduct discovery. Rule 26(d) of the Federal Rules of Civil Procedure state that ". .the fact that a party is conducting discovery . .does not operate to delay any other party's discovery." Thus, the mere fact that Plaintiff is having difficulty in conducting her own discovery (i.e. locating and deposing the former crew of the EVA DANIELSEN) does not justify Plaintiff's willful tactic of preventing Defendants from taking Plaintiff's deposition.

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA  94105

Memorandum of Points and Authorities
Case No.:  C 07 5487
G:\45100.011 EVA DANIELSEN\Discovery\MOTION TO COMPEL\P&A.doc

Defendants have made a number of attempts to resolve this issue with Plaintiff's counsel, but Plaintiff's counsel remains adamant that Plaintiff will only be produced for deposition if Defendants guarantee that Plaintiff can depose the captain and crew if they testify at trial. Aside from the fact that it is completely improper for Plaintiff's counsel to place such conditions on Defendants' right to depose the Plaintiff in this action, Defendants cannot provide the captain and crew for deposition, nor compel them to do so.

It should be noted, that Plaintiff's counsel could have deposed the crew of the EVA DANIELSEN when the vessel was detained for several days in Portland, Oregon, while the Coast Guard was investigating the collision. Admiralty courts have historically, and frequently, allowed such evidence to be taken *de bene esse*, i.e. on an ex parte basis in anticipation of future need, especially in the context of ship crewmembers who are frequently foreign nationals and difficult to locate once the ship sails. See Declaration of Jared A. Washkowitz. FRCP 30(a)(2)(C); *Domingo Angag, et al. v. M/V FAREEAST TRADER, in rem, et al.*, 1989 AMC 2721 (U.S.D.C., S.D. Texas 1989), (attached).

Plaintiff should be compelled to appear for deposition as soon as possible so the progress of this case is not delayed further.

### B. Plaintiff Should Be Compelled To Serve Further Responses To Defendants' Request For Production, Set One

Defendants seek further responses to Requests for Production Nos. 1, 11-19, and 21. Pursuant to Local Rule 37-2, Defendants recite the full text of each request, Plaintiff's response, and why further responses are warranted. None of the discovery sought by Defendants exceeds the limitations set forth in Fed.R.Civ.P. 26(b)(2).

### REQUEST FOR PRODUCTION NO. 1:

All documents which support Plaintiff's response to Special Interrogatory No. 1. For

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

- 5 -

Memorandum of Points and Authorities
Case No.: C 07 5487
G:\45100.011 EVA DANIELSEN\Discovery\MOTION TO COMPEL\P&A.doc

purposes of this request for production and all requests hereafter, "documents" shall be synonymous with "writings" as defined by Cal. Evidence Code § 250.

## PLAINTIFF'S RESPONSE TO RFP NO. 1:

As stated in Plaintiff's response to Special Interrogatory No.1, our discovery is continuing. In the meantime, Plaintiff is producing herewith the following documents:

1) Decedent's Form W-2 Wage and Tax Statement for 2002 (Bates Stamp No. 465)

2) Decedent's Federal Form 1040 tax return for 2004  (Bates Stamp Nos. 466-480)

3) Decedent's Federal Form 1040 tax return for 2005 (Bates Stamp Nos. 481-493)

4) Decedent's Federal Form 1040 tax return for 2006 (Bates Stamp Nos. 494-509)

5) Certified report dated May 6, 2008 from the California Department of Fish and Game of all Landing Receipt records for Decedent from 1987 through 2007 (Bates Stamp Nos. 510-511).

## WHY FURTHER RESPONSE IS REQUIRED:

This request seeks all documents supporting Plaintiff's response to Special Interrogatory No. 1, which requests Plaintiff to state Mr. Wade's gross income from commercial fishing for the past ten years.  Plaintiff produced Mr. Wade's tax returns for 2002, 2004, 2005 and 2006, but no tax returns for 1998 – 2001, 2003 or 2007.  Defendants have requested Plaintiff to supplement her responses to provide these items, but she has failed to do so or explain why those have not been produced.

## REQUEST FOR PRODUCTION NO. 11:

All documents which support Plaintiff's response to Special Interrogatory No. 11.

## PLAINTIFF'S RESPONSE TO RFP NO. 11:

Plaintiff's response to said Special Interrogatory is that is its premature, and discovery is continuing.

## WHY FURTHER RESPONSE IS REQUIRED:

Defendants' Special  Interrogatory No. 11 requested Plaintiff to state all facts supporting

- 6 -

her contention that Defendants violated rule 5 of COLREGS, as alleged in the Complaint. See

Declaration of Jared A. Washkowitz.  Plaintiff's response to this interrogatory states that 'all

facts' are not available yet because the Coast Guard has not completed its investigation and

because witnesses have not been deposed.  Id.  However, the response further states that 'the

available evidence nonetheless indicates" that the crew of the EVA DANIELSEN were not

keeping a proper lookout.  Id.

This request for production requires Plaintiff to produce the 'available evidence' she

refers to in the corresponding interrogatory response.  Defendants are clearly entitled to the

evidence that Plaintiff claims support her allegations that Defendants violated a navigational rule.

Despite repeated requests to Plaintiff's counsel for this evidence, Plaintiff has not provided

additional it, nor otherwise explained what this 'available evidence' is.

**REQUEST FOR PRODUCTION NO. 12:**

All documents which support Plaintiff's response to Special Interrogatory No. 12.

**PLAINTIFF'S RESPONSE TO RFP NO. 12:**

Plaintiff's response to said Special Interrogatory is that is its premature, and discovery is
continuing.

**WHY FURTHER RESPONSE IS REQUIRED:**

Defendants' Special Interrogatory No. 12 requested Plaintiff to state all facts supporting

her contention that Defendants violated rule 6 of COLREGS, as alleged in the Complaint. See

Declaration of Jared A. Washkowitz.  Plaintiff's response to this interrogatory states that 'all

facts' are not available yet because the Coast Guard has not completed its investigation and

because witnesses have not been deposed.  Id.  However, the response further states that 'the

available evidence nonetheless indicates" that the crew of the EVA DANIELSEN was not

proceeding at a safe speed.  Id.

- 7 -

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

Memorandum of Points and Authorities
Case No.: C 07 5487
G:\45100 011 EVA DANIELSEN\Discovery\MOTION TO COMPEL\P&A.doc

This request for production requires Plaintiff to produce the 'available evidence' she refers to in the corresponding interrogatory response. Defendants are clearly entitled to the evidence that Plaintiff claims support her allegations that Defendants violated a navigational rule. Despite repeated requests to Plaintiff's counsel for this evidence, Plaintiff has not provided additional it nor otherwise explained what this 'available evidence' is.

**REQUEST FOR PRODUCTION NO. 13:**

All documents which support Plaintiff's response to Special Interrogatory No. 13.

**PLAINTIFF'S RESPONSE TO RFP NO. 13:**

Plaintiff's response to said Special Interrogatory is that is its premature, and discovery is continuing.

**WHY FURTHER RESPONSE IS REQUIRED:**

Defendants' Special Interrogatory No. 13 requested Plaintiff to state all facts supporting her contention that Defendants violated rule 7 of COLREGS, as alleged in the Complaint. See Declaration of Jared A. Washkowitz. Plaintiff's response to this interrogatory states that 'all facts' are not available yet because the Coast Guard has not completed its investigation and because witnesses have not been deposed. Id. However, the response further states that 'the available evidence nonetheless indicates" that the crew of the EVA DANIELSEN did not use all available means to determine the risk of collision. Id.

This request for production requires Plaintiff to produce the 'available evidence' she refers to in the corresponding interrogatory response. Defendants are clearly entitled this evidence that Plaintiff claims support her allegations that Defendants violated a navigational rule. Despite repeated requests to Plaintiff's counsel for this evidence, Plaintiff has not provided it nor otherwise explained what the 'available evidence' is.

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

Memorandum of Points and Authorities
Case No.: C 07 5487
G:\45100.011 EVA DANIELSEN\Discovery\MOTION TO COMPEL\P&A.doc

**REQUEST FOR PRODUCTION NO. 14:**

All documents which support Plaintiff's response to Special Interrogatory No. 14.

**PLAINTIFF'S RESPONSE TO RFP NO. 14:**

Plaintiff's response to said Special Interrogatory is that is its premature, and discovery is continuing.

**WHY FURTHER RESPONSE IS REQUIRED:**

Defendants' Special Interrogatory No. 14 requested Plaintiff to state all facts supporting her contention that Defendants violated rule 8 of COLREGS, as alleged in the Complaint. See Declaration of Jared A. Washkowitz. Plaintiff's response to this interrogatory states that 'all facts' are not available yet because the Coast Guard has not completed its investigation and because witnesses have not been deposed. Id. However, the response further states that 'the available evidence nonetheless indicates" that the crew of the EVA DANIELSEN did not use available means to avoid a collision. Id.

This request for production requires Plaintiff to produce the 'available evidence' she refers to in the corresponding interrogatory response. Defendants are clearly entitled the evidence that Plaintiff claims support her allegations that Defendants violated a navigational rule. Despite repeated requests to Plaintiff's counsel for this evidence, Plaintiff has not provided it nor otherwise explained what this 'available evidence' is.

**REQUEST FOR PRODUCTION NO. 15:**

All documents which support Plaintiff's response to Special Interrogatory No. 15.

**PLAINTIFF'S RESPONSE TO RFP NO. 15:**

Plaintiff's response to said Special Interrogatory is that is its premature, and discovery is continuing.

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

Memorandum of Points and Authorities
Case No.: C 07 5487
G:\45100.011 EVA DANIELSEN\Discovery\MOTION TO COMPEL\P&A.doc

**WHY FURTHER RESPONSE IS REQUIRED:**

Defendants' Special Interrogatory No. 15 requested Plaintiff to state all facts supporting her contention that Defendants violated rule 19 of COLREGS, as alleged in the Complaint. See Declaration of Jared A. Washkowitz. Plaintiff's response to this interrogatory states that 'all facts' are not available yet because the Coast Guard has not completed its investigation and because witnesses have not been deposed. Id. However, the response further states that 'the available evidence nonetheless indicates" that the crew of the EVA DANIELSEN was not proceeding at a speed adapted to the foggy conditions. Id.

This request for production requires Plaintiff to produce the 'available evidence' she refers to in the corresponding interrogatory response. Defendants are clearly entitled the evidence that Plaintiff claims support her allegations that Defendants violated a navigational rule. Despite repeated requests to Plaintiff's counsel for this evidence, Plaintiff has not provided it, nor otherwise explained what the 'available evidence' is.

**REQUEST FOR PRODUCTION NO. 16:**

All documents which support Plaintiff's response to Special Interrogatory No. 16.

**PLAINTIFF'S RESPONSE TO RFP NO. 16:**

Plaintiff's response to said Special Interrogatory is that is its premature, and discovery is continuing.

**WHY FURTHER RESPONSE IS REQUIRED:**

Defendants' Special Interrogatory No. 16 requested Plaintiff to state all facts supporting her contention that Defendants violated rule 35 of COLREGS, as alleged in the Complaint. See Declaration of Jared A. Washkowitz. Plaintiff's response to this interrogatory states that 'all facts' are not available yet because the Coast Guard has not completed its investigation and because witnesses have not been deposed. Id. However, the response further states that 'the

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

available evidence nonetheless indicates" that the crew of the EVA DANIELSEN was not sounding the appropriate signals for the foggy conditions. Id.

This request for production requires Plaintiff to produce the 'available evidence' she refers to in the corresponding interrogatory response. Defendants are clearly entitled the evidence that Plaintiff claims support her allegations that Defendants violated a navigational rule. Despite repeated requests to Plaintiff's counsel for this evidence, Plaintiff has not provided it, nor otherwise explained what the 'available evidence' is.

## REQUEST FOR PRODUCTION NO. 17:

All documents which support Plaintiff's response to Special Interrogatory No. 17.

## PLAINTIFF'S RESPONSE TO RFP NO. 17:

Plaintiff's response to said Special Interrogatory is that is its premature, and discovery is continuing.

## WHY FURTHER RESPONSE IS REQUIRED:

Defendants' Special Interrogatory No. 17 requested Plaintiff to state all facts supporting her contention that the EVA DANIELSEN 'deviated from the customary shipping lanes' as alleged in the Complaint. See Declaration of Jared A. Washkowitz. Plaintiff's response to this interrogatory states that 'all facts' are not available yet because the Coast Guard has not completed its investigation and because witnesses have not been deposed. Id. However, the response further states that 'the available evidence nonetheless indicates" that the EVA DANIELSEN was proceeding 'well outside the customary shipping lanes for commercial vessels of that size'. Id.

This request for production requires Plaintiff to produce the 'available evidence' she refers to in the corresponding interrogatory response. Defendants are clearly entitled the evidence that Plaintiff claims support her allegations that Defendants deviated from customary

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

Memorandum of Points and Authorities
Case No.: C 07 5487
G:\45100.011 EVA DANIELSEN\Discovery\MOTION TO COMPEL\P&A.doc

shipping lanes. Despite repeated requests to Plaintiff's counsel for this evidence, Plaintiff has not provided the evidence, nor otherwise explained what the 'available evidence' is.

### REQUEST FOR PRODUCTION NO. 18:

All documents which support Plaintiff's response to Special Interrogatory No. 18.

### PLAINTIFF'S RESPONSE TO RFP NO. 18:

Plaintiff's response to said Special Interrogatory is that is its premature, and discovery is continuing.

### WHY FURTHER RESPONSE IS REQUIRED:

Defendants' Special Interrogatory No. 18 requested Plaintiff to state all facts supporting her contention that Defendants knew that the waters into which the EVA DANIELSEN proceeded were home to a busy local fishing ground, as alleged in the Complaint. See Declaration of Jared A. Washkowitz. Plaintiff's response to this interrogatory states that 'all facts' are not available because the Coast Guard has not completed its investigation and because witnesses have not been deposed. Id. However, the response further states that 'the available evidence nonetheless indicates" that the EVA DANIELSEN 'not only knew there were fishing boats in the area . . . but that she attempted to contact them on radio." Id.

This request for production requires Plaintiff to produce the 'available evidence' she refers to in the corresponding interrogatory response. Defendants are clearly entitled the evidence that Plaintiff claims support her allegations that Defendants knew the EVA DANIELSEN was motoring in a busy fishing ground. Despite repeated requests to Plaintiff's counsel for this evidence, Plaintiff has not provided it, nor otherwise explained what the 'available evidence' is.

### REQUEST FOR PRODUCTION NO. 19:

All documents which support Plaintiff's response to Special Interrogatory No. 19.

EMARD DANOFF PORT
IAMUSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA  94105

Memorandum of Points and Authorities
Case No.: C 07 5487
G:\45100.011 EVA DANIELSEN\Discovery\MOTION TO COMPEL\P&A.doc

**PLAINTIFF'S RESPONSE TO RFP NO. 19:**

Plaintiff's response to said Special Interrogatory is that is its premature, and discovery is continuing.

**WHY FURTHER RESPONSE IS REQUIRED:**

Defendants' Special Interrogatory No. 19 requested Plaintiff to state all facts supporting her contention that Defendants knew or should have known that there were likely to be many small, wooden hulled commercial fishing vessels operating in the EVA DANIELSEN's projected course, as alleged in the Complaint. See Declaration of Jared A. Washkowitz. Plaintiff's response to this interrogatory states that 'all facts' are not available yet because the Coast Guard has not completed its investigation and because witnesses have not been deposed. Id. However, the response further states that 'the available evidence nonetheless indicates" that the EVA DANIELSEN 'not only knew there were fishing boats in the area . . . but that she attempted to contact them on radio. ."Id.

This request for production requires Plaintiff to produce the 'available evidence' she refers to in the corresponding interrogatory response. Defendants are clearly entitled the evidence that Plaintiff claims support her allegations that Defendants knew that many small commercial fishing vessels operated in the EVA DANIELSEN's projected course. Despite repeated requests to Plaintiff's counsel for this evidence, Plaintiff has not provided it, nor otherwise explained what the 'available evidence' is.

**REQUEST FOR PRODUCTION NO. 21:**

All documents which support Plaintiff's response to Special Interrogatory No. 21.

**PLAINTIFF'S RESPONSE TO RFP NO. 21:**

Plaintiff's response to said Special Interrogatory is that is its premature, and discovery is continuing.

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

Memorandum of Points and Authorities
Case No.: C 07 5487
G:\45100.011 EVA DANIELSEN\Discovery\MOTION TO COMPEL\P&A.doc

**WHY FURTHER RESPONSE IS REQUIRED:**

Defendants' Special Interrogatory No. 21 requested Plaintiff to state all facts supporting her contention that Defendants operated the EVA DANIELSEN with gross negligence or in reckless disregard of the safety of others, as alleged in the Complaint. See Declaration of Jared A. Washkowitz. Plaintiff's response to this interrogatory states that 'all facts' are not available because the Coast Guard has not completed its investigation and because witnesses have not been deposed. Id. However, the response further states that 'the available evidence nonetheless indicates" that the EVA DANIELSEN 'was proceeding at an unsafe speed, in heavy fog, well outside the customary shipping lanes, through a known fishing ground, without maintaining a proper lookout or sounding the required signals." Id.

This request for production requires Plaintiff to produce the 'available evidence' she refers to in the corresponding interrogatory response. Defendants are clearly entitled the evidence that Plaintiff claims support her allegations that Defendants operated the EVA DANIELSEN in a grossly negligent or reckless manner. Despite repeated requests to Plaintiff's counsel for this evidence, Plaintiff has not provided it, nor otherwise explained what the 'available evidence' is.

**C.    Defendants Should Be Awarded Monetary Sanctions Against Plaintiffs For All Expenses Incurred In Bringing This Motion**

Fed.R.Civ.P. 37 and L.R. 37-3 state that the Court shall award monetary sanctions against the party or attorney whose conduct necessitated the motion unless the conduct was justified.

Here, the conduct of Plaintiff's counsel in refusing to produce Plaintiff for deposition is not justified. Plaintiff's counsel is well aware that it is improper to prevent Defendants from conducting discovery just because Plaintiff is having difficulty locating non-party witnesses, through no fault of Defendants. Plaintiff's conditioning the deposition on factors that are beyond

- 14 -

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

Memorandum of Points and Authorities
Case No.: C 07 5487
G:\45100.011 EVA DANIELSEN\Discovery\MOTION TO COMPEL\P&A.doc

1  Defendants' control (such as guaranteeing that the captain and crew will first agree to be deposed

2  if they testify at trial) is equally improper.  Defendants made numerous attempts to avoid

3  bringing this motion, but Plaintiff's conduct has forced Defendants to incur the expense of doing

4  so.

5

6          Likewise, with respect to Plaintiff's responses to Requests for Production, this motion

7  easily could have been avoided if Plaintiff had simply been proactive in responding to

8  Defendants' many meet and confer attempts.  However, Plaintiff again has forced Defendants to

9  incur the expense of bringing this motion to obtain what should be fairly straightforward

10  supplemental responses.

11          Accordingly Defendants request that an award of monetary sanctions in the amount set

12

13  forth in the accompanying Declaration of Jared A. Washkowitz be granted against Plaintiff

14  and/or Plaintiff's counsel.

15  \\\

16  \\\

17  \\\

18  \\\

19  \\\

20  \\\

21  \\\

22  \\\

23  \\\

24

25

26

27

28

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

Memorandum of Points and Authorities
Case No.: C 07 5487
G:\45100.011 EVA DANIELSEN\Discovery\MOTION TO COMPEL\P&A.doc

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.    CONCLUSION

Based on the foregoing, Defendants respectfully ask that the Court enter an Order compelling Plaintiff to appear for deposition as soon as possible, and compelling Plaintiff to serve further responses to Defendants' Requests for Production Set One Nos. 1, 11-19, and 21, and awarding Defendants monetary sanctions in the amount set forth in the Declaration of Jared A. Washkowitz, filed herewith.

DATED:  July 11, 2008                EMARD DANOFF PORT TAMULSKI & PAETZOLD LLP

By_____ /s/ Jared A. Washkowitz (SBN 226211)
                    James J. Tamulski
                    Jared A. Washkowitz
        Attorneys for Defendants REDERIET OTTO DANIELSEN,
        and K.S. ARIES SHIPPING

                    49 Stevenson Street, Suite 400
                    San Francisco, CA  94105
                    Telephone:  (415) 227-9455

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA  94105

Memorandum of Points and Authorities
Case No.:  C 07 5487
G:\45100.011 EVA DANIELSEN\Discovery\MOTION TO COMPEL\P&A.doc

simply not what "operate" means. Accordingly, we find that Helena was not covered by Union's CGL policies.

In addition to arguing that Union did not operate barges in its business, appellants also contend that their policies do not cover Helena because barges do not constitute "mobile equipment" under the terms of the insurance contract. Our finding that Union did not operate barges in its business negates the need for any further analysis of the insurance contract. Thus, we note only that we do find the assertion that the barges constituted the type of mobile equipment envisioned by the CGL policy to be problematic because of the limiting phrase "such as road construction equipment or fork lifts" found in the policy. The "phrase 'such as' is not a phrase of strict limitation", but it is "a phrase of general similitude". *Donovan v. Anheuser-Busch, Inc.*, 666 F.2d 315, 327 (8 Cir. 1981).

Thus, we reverse the judgment of the district court and dismiss all claims against appellants.

---

### DOMINGO ANGAD, *ET AL.*, *Plaintiffs*

*v.*

### M/V *FAREAST TRADER, IN REM*, FAREAST TRADER NAVIGATION S.A., AND WAH TUNG SHIPPING AGENCY CO., LTD., *Defendants*

United States District Court, Southern District of Texas (Galveston Division),
August 23, 1989
Civil No. G-89-221

**ARTICLES AND WAGES—1731. At End of Voyage—JURISDICTION—134. Suits between Foreigners.**

The *forum non conveniens* doctrine does not apply to a seaman's good faith claim for unpaid wages.

**ARBITRATION—111. Agreement to Arbitrate Future Disputes—ARTICLES AND WAGES—12. Employment Contract—CONTRACTS—17. Remedies for Breach.**

Arbitration clauses in seamen's employment contracts are not enforceable by the shipowner-employer.

**PRACTICE—115. Federal Rules of Civil Procedure—Rule 30(b)(3)—247. De Bene Esse.**

Although foreign seamen plaintiffs are entitled to preserve their testimony under FRCP 30(b)(2) before their vessel sails, these depositions may not be

used at trial unless the seamen are subsequently made available to defendent shipowner, at its expense, for supplemental discovery.

**PRACTICE—22. Release on Security.**

A vessel release bond should be large enough to cover payment of plaintiff's recovery in the event of a successful outcome at trial.

**ARTICLES AND WAGES—173. Payment of Wages, Attachment, Garnishment.**

Where Panamanian shipowner required its Filipino seamen to sign monthly wage receipts for more than they actually received, the seamen are entitled to recover the higher amounts.

**ARTICLES AND WAGES—175. Double Wages—JURISDICTION—148. Wages.**

Unpaid wages accruing anywhere in the world will trigger the U.S. penalty wage statute so long as an American court has jurisdiction over the vessel or shipowner. Since penalty wages begin to run again at the end of each separate voyage, this can lead to a significant geometric progression of the amounts due in cases where wages have not been paid for several voyages.

Michael B. Hughes and Michael L. Neely (McLeod, Alexander, Powell & Apfell) *for Plaintiffs*

Edward K. Patterson, Jr. (Royston, Rayzor, Vickery & Williams) *for Defendants M/V* Fareast Trader, *Fareast Trader Navigation, S.A. and Wah Tung Shipping Agency Co.*

Edward H. Schwab, III (Schwab & Tompkins) *for Intervenor Aimcor*

HUGH GIBSON, D.J.:

This matter is before the Court on a Motion for Summary Judgment filed by plaintiffs pursuant to Rule 56 of the Federal Rules of Civil Procedure[1]. Plaintiffs[2], 24 Filipino seamen and one Chinese seaman who are serving on board the *Fareast Trader*, a vessel flying the Panamanian flag and owned by a Panamanian corporation, Fareast Trader Naviga-

---

[1] The evidence before this Court consists of the deposition testimony of the master of the M/V *Fareast Trader* and that of four crewmembers, with exhibits attached thereto, including the deck logs of the *Fareast Trader*, 24 separate affidavits from plaintiffs, the voyage records of the *Fareast Trader*, a computer analysis of the double wage penalties due plaintiffs, a computer analysis of the double wage penalties due plaintiffs for "amount of claim fairly stated," Panamanian shipping articles on board the *Fareast Trader* with the ITF collective agreement attached thereto, portage bills or wage receipts with the amount of wages that should have been paid, crewmember overtime tally sheets, portage bills or wage receipts of the actual amounts paid plaintiffs, time charter agreement between Fareast Trader Navigation, S.A., and Nippon Yusen Kaisha, cash advances to crew and single payments records of shipowner for ITF only, manning agents' contracts, appraisal of the *Fareast Trader*, Certificate of Attendance certifying seamen hired by "AAREMA Shipping and Trading Company, Inc.," and certain stipulations by counsel.

[2] One seaman, Mr. Benitz, was killed on April 6, 1989, and his action is brought by his wife. All 25 plaintiffs are referred to collectively as "Filipino plaintiffs."

2721

tion, S.A., brought this action for past due unpaid wages, for double wage penalties pursuant to the United States Shipping Code, 46 U.S.C. §10313, and costs, and seek certain injunctive relief[3].

The Philippine plaintiffs were recruited by King Loon Shipping Agency, Inc. in Manila and executed a shipboard employment contract. Philippine plaintiffs claim that they executed the contracts "in blank," with no figures showing the wages to be paid, and were orally told the amount of the wages. The shipowner, on the other hand, claims that the Shipboard Employment Contracts were complete on their face showing the wages for each plaintiff. After executing the contracts in Manila, the Philippine seafarers were flown from Manila to Hong Kong and then, several days later, to the ship's location in Bombay, India, and joined the vessel on November 14, 1988[4]. Upon joining the vessel, the plaintiffs were required to sign shipping articles specifying wages much greater than those that were discussed in Manila. The shipping articles further specified that "all seafarers serving on board the above vessel shall be governed by the terms of the current ITF collective agreement." The wages stipulated in the shipping articles were identical to those contained in the ITF collective agreement. The seafarers were paid on a monthly basis. The plaintiffs' wages were paid on the basis of the lower Manila figures. Each month, each seafarer was required to sign two different sets of wage receipts or portage bills, one reflecting receipt of the lower wages stated in the Manila contracts and another wage receipt or portage bill reflecting receipt of the higher wages stated in the shipping articles and the ITF collective agreement. Defendants have argued that his practice was required to avoid "ITF harassment" while at the same time maintaining crew wages at the "going rate," an argument which the Court finds unpersuasive.

On August 5, 1989, the Philippine plaintiffs caused the *Fareast Trader* to be arrested in Galveston, Texas, seeking their past due wages under the shipping articles and ITF agreement, double wages, and costs.

---

[3] By amended complaint, plaintiffs seek injunctive relief from the shipowner's harassment and invasion of their privacy, and likewise seek a protective order prohibiting retaliatory discharge.

[4] 19 of the Filipino plaintiffs joined the vessel on November 14, 1988, three joined the vessel in January of 1989, and two in May of 1989. The Chinese plaintiff, Mr. Leung Chi Wah, joined the vessel on November 14, 1988 and executed his contract in Hong Kong.

*Preliminary Considerations*

Shortly after the vessel was arrested, the shipowner, Fareast Trader Navigation, S.A., and its operator and manager, Wah Tung Shipping Agency Co., Ltd., moved this Court to dismiss the Philippine plaintiffs' claims on the grounds of *forum non conveniens* and to quash the notices of depositions filed by plaintiffs to depose the master and entire crew. Alternatively, defendants sought to obtain the release of the *Fareast Trader* by requesting this Court to set a bond in the sum of $250,000. After an evidentiary hearing, Magistrate Smith submitted a recommendation to deny the motion based on *forum non conveniens*, to allow the discovery sought by plaintiffs, subject to the condition that the deposition testimony of plaintiffs could be used at trial only if the plaintiffs were subsequently re-produced for supplemental deposition, at defendants' sole expense and option, and set a bond in the sum of $7,100,000, which was the appraised value of the vessel. This Court adopts the recommendations of Magistrate Smith.

The doctrine of *forum non conveniens* is not applicable to a wage claim brought in good faith by a plaintiff pursuant to the United States Shipping Code, 46 U.S.C. §10313. Jurisdiction of the Court is mandatory and the case must be heard absent a showing by defendant shipowner that the plaintiffs' claims are brought in bad faith. This is the law in virtually every circuit of the United States. See *Abraham v. Universal Glow,* 1984 AMC 2555, 681 F.2d 451 (5 Cir. 1982); *Monteiro v. Sociedad Maritima San Nicolas, S.A.,* 1963 AMC 1885, 280 F.2d 568 (2 Cir. 1960); *Mihalinos v. Liberian S.S. Trikala,* 1972 AMC 726 (S.D.Cal 1972); *Velidor v. L/P/G Benghazi,* 1981 AMC 2427, 653 F.2d 812 (3 Cir. 1981); *Lascaratos v. Liberian S/T Olympic Flame,* 1965 AMC 310 (E.D.Pa. 1963); *Cerda v. Eletson Maritime Corporation,* 1982 AMC 1178 (E.D.Pa. 1981); *Kanagaratnam v. Vialogro Compania Naviera, S.A.,* 1985 AMC 865 (S.D.N.Y. 1984). The shipowner's argument that this case should be transferred to the Republic of the Philippines because the employment contracts called for "arbitration by the Philippine Overseas Employment Administration ... to the exclusion of any other authority..." is untenable. In *U.S. Bulk Carriers, Inc. v. Arguelles,* 400 U.S. 351, 1971 AMC 286 (1971), the United States Supreme Court specifically held that a collective bargaining agreement requiring arbitration was not enforceable by the shipowner, that the court would not "shut the courthouse door" on seafarers, and that a contractual agreement requiring arbitration only provided an optional

remedy, at the election of the seafarer, to engage in arbitration or to pursue their remedies before an admiralty court.

This Court also accepts the Magistrate's finding that the plaintiffs are entitled to full discovery and to take the depositions of the master and the entire crew in Galveston, Texas. Plaintiffs filed notices of depositions pursuant to the provisions of Federal Rule of Civil Procedure 30(b)(2) which provides that leave of court is not required in the taking of depositions by the plaintiff "if the notice (a) states that the person to be examined is about to go out of the district where the action is pending and more than 100 miles from the place of trial, or is about to go out of the United States, or is bound on a voyage to sea. . ." This rule was adopted for the express purpose of allowing accelerated discovery in cases of this nature. See 1970 notes of the advisory committee pertaining to Rule 3 of the Federal Rules of Civil Procedure; *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982). In a claim for wages and penalty wages, especially where it is alleged that the shipowner deceitfully and dishonestly withheld a seafarer's rightful wages, it is important that the evidence be preserved and that the difficulties of recalling the crew of the vessel at a later time and associated problems be avoided. However, the Court expressly notes and adopts the Magistrate's ruling that said deposition testimony of plaintiffs could not be used at trial unless plaintiffs were subsequently re-produced for supplemental depositions, at defendants' expense and option. Plaintiffs sought to preserve their testimony for trial purposes, but to do so without any right of subsequent cross-examination, in light of ongoing discovery, would be tantamount to compelling defendants to submit to trial without resort to reasonable discovery. The plaintiffs who seek the protection from American courts must also make themselves reasonably available to such courts under reasonable terms to conduct such discovery as American courts properly require.

This Court additionally finds that the Magistrate properly fixed the bond for the release of the *Fareast Trader* in the sum of $7,100,000. Rule E(5)(a) of the Supplemental Rules of Certain Admiralty and Maritime Claims provides that, in the event the parties cannot agree upon a bond, it shall be fixed "at an amount sufficient to cover the amount of the plaintiff's claim fairly stated with accrued interest and costs; but the principal sum should in no event exceed (i) twice the amount of the plaintiff's claim or (ii) the value of the property on due appraisement, whichever is smaller. The bond or stipulation shall be conditioned for the payment of the principal sum and interest thereon

at 6 percent per annum." Plaintiffs introduced into evidence an appraisal of the vessel showing that its fair market value was the sum of $7,100,000. Additionally, plaintiffs likewise introduced affidavits showing that the present amount of plaintiffs' claim, fairly stated, was somewhat less than the appraised value of the vessel, but that in one year, the amount of double wage penalty would exceed $9,000,000. The bond for the release of the vessel must include not only the amount that would be due at the time of the bond hearing, but a sufficient sum to cover payment of the claim when the case would ultimately come to trial. As the appraised value of the vessel is $7,100,000, and inasmuch as this is smaller than the amount of plaintiffs' claim, fairly stated, the bond was properly set in the sum of $7,100,000.

### The Seaman's Contract of Employment and Amount of Past Wages Due

It is well accepted that the shipping articles normally constitute the contract of employment between the seafarer and the shipowner. See *The Law of Seamen*, 4th Edition, Norris, 1985, Chapter 6, The Shipping Articles, §6.1; 46 U.S.C. §§10101, 10301, and 10304; *Benedict on Admiralty*, 7th Edition, 1988, §62. In the instant case, the wages stipulated in the shipping articles were identical to those contained in the collective agreement. It is not necessary for this Court to determine whether or not the contracts signed by the seafarers in Manila stipulating the lower wages were, in fact, signed in blank and had no wage figures inserted at that time or if the Manila contracts contained the lower wage figures at the time of their execution. It has long been held that the maritime laws were enacted for the benefit of the seamen and for their protection and not for the shipowner. Any document executed by a seafarer in derogation of his rights or seeking to limit his wages has been held null and without any effect. See *Brown v. Lull*, Fed. Cas. No. 2018 (CC Mass. 1836); *The Howick Hall*, 1925 AMC 1003, 10 F.2d 162, (E.D. La. 1925). The plaintiffs are entitled to the larger sum of wages shown in the shipping articles and the ITF collective agreement. In the instant case, the seafarers were required to sign wage receipts and portage bills on a monthly basis confirming that they received the higher wages when, in fact, they were receiving the lower wages attested to by a separate set of wage receipts and portage bills. In such cases where a shipowner engages in the dubious practice of maintaining two sets of wage records or portage bills, the higher set of portage bills or wage records must be considered as a contractual

## ANGAD v. *FAREAST TRADER*    2727

agreement between the seafarer and the shipowner, and the shipowner must pay the higher wages. This interpretation is consistent with the maritime policy of voiding any document in derogation of the seafarers' rights and protecting the seamen, wards of the court, from potentially overreaching activities by the shipowners.

This Court accepts the affidavit submitted by plaintiffs computing the past due wages. This Court finds the wages collectively due plaintiffs are the amount stipulated in the higher wage receipts less those sums that were actually paid, leaving a balance due the seamen in the aggregate sum of $292,639.49[5].

### *Penalty Wages—When they Began and Method of Computation*

It is clear that the United States Shipping Code, 46 U.S.C. §10313, applies to foreign vessels and foreign seamen when in harbors of the United States[6]. The pertinent provisions of 46 U.S.C. §10313 are as follows:

[5] The amounts due each plaintiff in past due wages are itemized in Appendix 1. [Omitted-Eds.]

[6] The application of the United States Shipping Code to foreign seamen serving on a foreign vessel is mandated by the express language of the statute. The purpose of this statute was noted in *Monteiro v. Sociedad Maritima San Nicolas, S.A.,* 1963 AMC 1885, 280 F.2d 568 (2 Cir. 1960), wherein the court in citing from "The Unpublished Opinions of Justice Brandeis" noted that application of the U.S. Shipping Code to foreign seamen and foreign vessels was beneficial to American seamen. "It was thought to apply to foreign vessels touching an American port some of the same requirements imposed upon our own would tend to 'equalize the cost of operation' of American foreign flag vessels and thereby discourage American shipowners from listing their vessels under foreign flags.' " Also, in *Velidor v. Benghazi,* 1981 AMC 2427, 653 F.2d 812, the court stated: "The purpose of the Seaman's Wage Act is 'to protect from overreaching a generally impecunious class,' and to insure that foreigners 'will not be turned ashore without funds,' so that 'they become a public charge on the harbor.' *Strathearn S.S. Co. v. Dillon,* 252 U.S. 348 (1920); *Mavromatis,* supra. The protective mantle of the Act is not confined to foreign seamen, however; it also guards the interests of American seamen by equalizing the cost of operating United States and foreign flag vessels. American shipowners are thereby discouraged from placing their vessels under foreign flags, and foreign owners have no special incentive to avoid hiring United States citizens as crewmembers. See *Monteiro v. Sociedad Maritima San Nicolas, S.A.,* 1963 AMC 1885, 280 F.2d 568 (2 Cir. 1960)." This Court likewise notes the tremendous decline in American flag vessels and the employment of American seamen and that the United States seafarers are in need of protection. Between 1970 and 1982, the number of U.S. flag liner operators declined from 19 to only 6. See *U.S. Department of Transportation, Maritime Administration,* Marad/86 Page 11. In the period between 1981 to 1986, there was a decline of almost 40% in United States seafarers and half of those who remained active were 50 years of age or older. See *Commission on the Merchant Marine & Defense,* 1st Report of Commission on Merchant Marine & Defense: Findings of Fact and Conclusions (Alexandria: Commission on

2728    1989 AMERICAN MARITIME CASES

"(f) *At the end of a voyage, the master shall pay each seaman the balance of wages due the seaman within 24 hours after the cargo has been discharged* or within 4 days after the seaman is discharged, whichever is earlier. When a seaman is discharged and final payment of wages is delayed for the period permitted by this subsection, the seaman is entitled at the time of discharge to one-third of the wages due the seaman. (Emphasis added.)

"(g) When payment is not made as provided under subsection (f) of this section without sufficient cause, the master or owner shall pay the seaman 2 days' wages for each day payment is delayed.

* * *

"(i) This section applies to a seaman on a foreign vessel when in a harbor of the United States. The courts are available to the seaman for the enforcement of this section."

In the instant case, plaintiffs were not discharged. However, the evidence is undisputed that they were not paid their full wages "at the end of a voyage" and "within 24 hours after the cargo has been discharged." As long as a voyage ends in the United States of America and this Court obtains personal or *in rem* jurisdiction, the provisions of the Shipping Code are applicable. The only requirement jurisprudentially imposed onto the the United States Shipping Code is that the wages be withheld or not paid in a United States port or in United States territorial waters; unpaid wages accruing anywhere in the world suffice for the applicability of the double wage penalty. Indeed, in the case of *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 1982 AMC 2377 (1982), the plaintiff was discharged in international waters in the North Sea and his demand for payment occurred at that time[7]. The shipowner

---

Merchant Marine & Defense, September 30, 1987). Additionally, between 1981 and 1986, the number of privately owned and active ocean going ships of the United States Merchant Fleet declined from 533 to 363 vessels. See *U.S. Merchant Marine Data Sheet,* May 1, 1981 and May 1, 1987; Lawrence Juda, *The Reagan Administration and United States Maritime Policy,* 19 Journal of Mar. L. & Com. 323 at 346.

[7] In the instant case, the vessel's first voyage after leaving Bombay, India, was completed on January 22, 1989, and cargo was discharged at that point in time, and the seamen orally requested their wages pursuant to the shipping articles and the ITF collective agreement. Indeed, the testimony of the plaintiffs is unanimous that they thereafter requested the wages at every port after the cargo was discharged, including United States ports. Immediately prior to the *Fareast Trader*'s voyage to Galveston, Texas, cargo was discharged in Tampa, Florida, and the seamen again were not paid their wages despite their request.

2721

may only avoid liability for the double wage penalty by showing "sufficient cause" for withholding the wages. The requirement of the shipowner and master that the seafarers execute false wage receipts showing the payment of higher wages is clearly not acceptable[8].

This Court likewise accepts the affidavit of plaintiffs computing the amount of penalty wages of "2 days wages for each day payment is delayed" which commenced to run on January 22, 1989, as that was the end of a voyage and the seafarers were not paid the balance of their wages within 24 hours after the cargo was discharged. Additionally, new penalty wages began to run at the end of a voyage when full wages were not paid leading to a significant geometric progression of penalty wages due at this time. Once a voyage is complete and full wages not paid within 24 hours after the cargo is discharged, penalty wages commence to run at that time and again commence to run for each subsequent voyage on which the seamen are not paid their full wages. This Court finds that the penalty wages presently due for the plaintiffs are in the aggregate sum of $1,997,166.62[9] as of August 22, 1989. The shipowner's arguments to avoid an imposition of penalty wages in this amount are without merit. The courts have consistently held that the purpose of 46 U.S.C. 10313 is to protect seamen from the harsh consequences of arbitrary actions of their employers. All that is required for the imposition of penalty wages is the inability of the shipowner to demonstrate "sufficient cause" for failure to "pay each seaman the balance of wages due the seaman within 24 hours after the cargo is discharged." Here the shipowner clearly failed to demonstrate "sufficient cause."

[8] Indeed, the charter party agreement introduced into evidence (wherein the shipowner had entered into a time charter with a Japanese corporation) provided that the owner was paying ITF wages to the crew.

[9] Attached as Appendix 2 [omitted-Eds.] is the computation of the penalty wages on a voyage by voyage basis and the amount due each plaintiff. The vessel's deck logs reveal that the vessel completed other voyages, entitling the seafarers to separate wage penalties commencing respectively on February 16, 1989, April 11, 1989, and May 18, 1989, and July 25, 1989, and running through the present. At the end of the first voyage of January 22, 1989, at which cargo was discharged, full wages were not paid. As such, the double wage penalty of "2 days wages for each day payment is delayed" commenced to run on January 22, 1989, and, thereafter, additional penalty wages commenced to run at the end of each separate voyage because full wages were not paid at that time. The aggregate balance continues to accrue until payment has actually been made to the plaintiffs by defendants because penalty wages will continue to accrue until actual payment occurs. Wages include basic salary, overtime, and all forms of compensation. *Monteiro v. Sociedad Maritima San Nicolas, S.A.,* 1963 AMC 1885, 280 F.2d 568 (2 Cir. 1960); *Glandzis v. Callinicos,* 1944 AMC 188, 140 F.2d 111 (2 Cir. 1944); *Lakos v. Saliaris,* 1941 AMC 190, 116 F.2d 440 (4 Cir. 1940).

### Injunctive Relief and Protective Order

The plaintiffs seek injunctive relief prohibiting a retaliatory discharge by the shipowner. Injunctive relief has been granted protecting employees in other cases. See *Aguilar v. Bane Service Systems, Inc.*, 538 F.Supp. 581, 584 (S.D.N.Y. 1982); *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 550 (1985); *Arcamuzi v. Continental Airlines, Inc.*, 81 F.2d 935 (9 Cir. 1987); *Keynard v. Palby Lingerie, Inc.*, 625 F.2d 1047 (2 Cir. 1980); *Aguayo v. Tomco Carburetor Co.*, 853 F.2d 744 (9 Cir. 1988). See also *Lewis v. S.S. Baune*, 1976 AMC 1275, 534 F.2d 1115 (5 Cir. 1976).

In the instant case, it is not necessary that the Court make an analysis of the evidence presented by plaintiffs in support of their requested injunctive relief inasmuch as the defendants, while denying contemplating retaliatory discharge, have agreed to the issuance of an injunction prohibiting them from duressing or harassing plaintiffs or from discharging plaintiffs in retaliation for bringing this litigation, and from taking any action to limit plaintiff's future employability. Plaintiffs agree to execute their duties in proper and seaman-like manner, being mindful of the maintenance and safety of the vessel and themselves.

A judgment will be entered in accordance with these Findings of Fact and Conclusions of Law.

---

### NATIONAL TRANSPORTATION SAFETY BOARD, *Petitioner*

*v.*

### CARNIVAL CRUISE LINES, INC., *ET AL., Respondents*

United States District Court, Southern District of Florida, October 20, 1989
No. 89-1413-Civ.-RYSKAMP

COLLISION—121. Collision in Foreign Waters—PRACTICE—191. In General—
REGULATION—1160. National Transportation Safety Board—STATUTES—
Federal Statutes—Independent Safety Board Act, 49 U.S. Code Sec. 1901.

Although under international law Congress could authorize investigation of a high seas collision between foreign-flag vessels where there is a substantial, direct and foreseeable consequence in the U.S., neither the National