IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| LORI WADE, individually and as personal representative of PAUL ALAN WADE, deceased,<br><br>    Plaintiff,<br><br>  v.<br><br>TSCHUDI SHIPPING COMPANY A.S.; REDERIET OTTO DANIELSEN; ARIES MARITIME TRANSPORT LTD.; and FIRST BALTIC SHIP MANAGEMENT A.S.,<br><br>    Defendants. | No. C 07-5487 CW<br><br>(Consolidated with No. C 08-3586 CW)<br><br>ORDER GRANTING MOTION TO DISMISS PLAINTIFF BRIAN STACY'S CLAIMS |

Rederiet Otto Danielsen and K/S Aries Shipping, Defendants in consolidated case No. C 08-3586, move to dismiss consolidated Plaintiff Brian Stacy's claim against them for negligent infliction of emotional distress.[1] Plaintiff opposes the motion. The matter was heard on December 18, 2008. Having considered oral argument and all of the papers submitted by the parties, the Court grants the motion.

---

[1] All generic references in this order to "Plaintiff" and "Defendants" are to Mr. Stacy and the moving Defendants, respectively.

BACKGROUND

This case arises from the death of Paul Alan Wade[2] as the result of a maritime accident on July 13, 2007.  Plaintiff is the owner and operator of the Marja, a commercial fishing vessel. According to the complaint, on the date of the accident, Plaintiff was fishing near Point Reyes National Seashore in foggy conditions "with visibility near zero."  Am. Compl. ¶ 11.  Plaintiff alleges that the Eva Danielsen, a large freight vessel owned and operated by Defendants, entered the fishing grounds at an unsafe speed on its way from the San Francisco Bay Area to Portland, Oregon.  At approximately 5:00 p.m., Plaintiff detected the Eva Danielsen on his radar at a distance of approximately one mile.  Believing the Eva Danielsen to be on a collision course with the Marja, Plaintiff established radio contact with the freighter.  The Eva Danielsen initiated evasive action and avoided hitting the Marja.  Although the fog prevented Plaintiff from seeing the Eva Danielsen, the ship was close enough that Plaintiff was able to hear its engine and to feel its wake.  He also "observed by radar" that the freighter "passed at close quarters."  Id. ¶ 12.

Following the Eva Danielsen's near-miss with the Marja, the freighter collided with the Buona Madre, a fishing vessel of which Mr. Wade was the captain.  Although the Buona Madre was allegedly near the Marja at the time of the collision, the complaint does not allege that Plaintiff saw, heard, felt, or otherwise perceived the collision contemporaneously with its occurrence.  The complaint does not clearly specify how Plaintiff learned of the collision,

---

[2] Mr. Wade is the decedent in the lead case.

2

but it implies that it was when the Eva Danielsen reported the accident to the Coast Guard by radio. After the Eva Danielsen made its report, it allegedly performed a brief search for survivors and continued on its way. Plaintiff claims that, "[f]ollowing the report of the collision," he "proceeded north of his position to assist in looking for evidence of the reported collision and persons who may have been in the water." Id. ¶ 15. While conducting this search, Plaintiff "heard radio traffic which expressed a belief" that the collision had been between the Eva Danielsen and the Marja. Id. He "advised all concerned by radio" that the Marja had not been struck. Id. "The search was thereafter suspended and Plaintiff resumed fishing." Id.

According to the complaint, on July 17, 2007, several days after the accident, "Plaintiff learned from other fishermen that the incident in which he was involved had resulted in the death of Buona Madre's captain, Paul Wade, and that Wade had apparently been alive and floating in the water near where Plaintiff was fishing." Id. ¶ 16. As a result of the accident, Plaintiff "suffered and continues to suffer great physical, mental, and nervous pain and suffering, stress and anxiety." Id. ¶ 22. He "was required to and did employ physicians and surgeons to examine, treat and care for him," thereby incurring "medical and incidental expenses." Id. ¶ 23. He was also "prevented from attending to his usual occupation and thereby has lost earnings and benefits." Id. ¶ 24.

Plaintiff now charges Defendants with negligent infliction of emotional distress for their failure to exercise due care as they proceeded through the fishing grounds off of Point Reyes.

3

LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990). Leave to amend should be liberally granted, but an amended complaint cannot allege facts inconsistent with the challenged pleading. Id. at 296-97.

DISCUSSION

The Ninth Circuit has held that claims for negligent infliction of emotional distress (NIED) are cognizable under general maritime law. Chan v. Society Expeditions, Inc., 39 F.3d

4

1398, 1409 (9th Cir. 1994).  In so ruling, the court analogized to Consolidated Rail Corp. v. Gottshall, 512 U.S. 532 (1994), in which the Supreme Court had recently allowed NIED claims under the Federal Employers' Liability Act (FELA).  Chan directed courts to "look to state common law for guidance" in evaluating maritime NIED claims, 39 F.3d at 1409.  The Ninth Circuit explained that "three main theories" limit the recovery of damages for emotional distress in the various common law jurisdictions:

> Under the most restrictive theory, the "physical injury or impact" rule, the plaintiff may recover emotional distress damages only if he or she suffers an accompanying physical injury or contact.  Under the next most restrictive theory, the "zone of danger" doctrine, the plaintiff may recover even though there is no physical contact, so long as the plaintiff (1) witnesses peril or harm to another and (2) is also threatened with physical harm as a consequence of the defendant's negligence.  The zone of danger test currently is followed in 14 jurisdictions.
>
> The third theory, adopted by nearly half the states, including California and Washington, is the "bystander proximity" rule.  The bystander proximity rule permits recovery, even if one is not in the zone of danger, provided the complainant: (1) is physically near the scene of the accident; (2) personally observes the accident; and (3) is closely related to the victim.

Id. (citations omitted).  The Chan court did not decide which of these tests should apply because the issue was not dispositive of the plaintiffs' claims under the specific facts of the case.

The Court here similarly need not determine which theory should be applied because Plaintiff has not stated a claim under any of them.  It is clear that he has not stated a claim under the physical impact theory because he does not allege that he was injured by the collision.  And because he does not allege that he is related to Mr. Wade, he has not stated a claim under the bystander proximity theory, either.

5

Whether Plaintiff can prevail under the zone of danger theory is less clear. Chan described the common law zone of danger theory as requiring that the plaintiff have witnessed "harm or peril" to another, and also have been threatened with physical harm him- or herself. In Gottshall, the Supreme Court had described the common law zone of danger theory differently. The Court explained that individuals "who sustain a physical impact as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct" may recover damages. Id. at 547-48 (emphasis added). However, in nearly all of the cases the Court cited as using the test, the plaintiffs sought to recover for NIED on the basis that they had witnessed another person be injured. See, e.g., Boucher v. Dixie Med. Ctr., 850 P.2d 1179 (Utah 1992); Garrett v. City of New Berlin, 362 N.W.2d 137 (Wis. 1985); Stadler v. Cross, 295 N.W.2d 552 (Minn. 1980); Shelton v. Russell Pipe & Foundry Co., 570 S.W.2d 861 (Tenn. 1978); Whetham v. Bismarck Hosp., 197 N.W.2d 678 (N.D. 1972). Some of the cases cited in Gottshall even explicitly formulate the zone of danger test as including a "witnessed harm" requirement, i.e., a requirement that the plaintiff have witnessed harm to another. See, e.g., Asaro v. Cardinal Glennon Mem'l Hosp., 799 S.W.2d 595, 599-600 (Mo. 1990) (holding that "a plaintiff states a cause of action for negligent infliction of emotional distress upon injury to a third person only upon a showing: (1) that the defendant should have realized that his conduct involved an unreasonable risk to the plaintiff, (2) that plaintiff was present at the scene of an injury producing, sudden event, (3) and that plaintiff was in the zone of danger, i.e., placed in a reasonable fear of physical injury to his or her

6

own person"); Bovsun v. Sanperi, 461 N.E.2d 843, 848 (N.Y. 1984) (holding that "where a defendant negligently exposes a plaintiff to an unreasonable risk of bodily injury or death, the plaintiff may recover, as a proper element of his or her damages, damages for injuries suffered in consequence of the observation of the serious injury or death of a member of his or her immediate family"); Rickey v. Chicago Transit Auth., 457 N.E.2d 1, 5 (Ill. 1983) ("[U]nder [the zone of danger rule,] a bystander who is in a zone of physical danger and who, because of the defendant's negligence, has reasonable fear for his own safety is given a right of action for physical injury or illness resulting from emotional distress. This rule does not require that the bystander suffer a physical impact or injury at the time of the negligent act, but it does require that he must have been in such proximity to the accident in which the direct victim was physically injured that there was a high risk to him of physical impact.")

In Chan, the Ninth Circuit did not find that the description of the common law zone of danger test that the Supreme Court provided in Gottshall applied to NIED claims in maritime cases. Rather, it left open the question of which test should be applied and how it should be formulated. It must be noted, however, that the rationale behind the Ninth Circuit's decision in Chan to permit an NIED claim under general maritime law was that compensation should available for "the psychic injury that comes from witnessing another being seriously injured or killed." Chan, 39 F.3d at 1408 (emphasis in original).

It does not appear that state courts commonly permit recovery under a zone of danger test that lacks a "witnessed harm"

7

requirement. Although the parties have not thoroughly discussed the elements of an NIED claim in the various common law jurisdictions, it is clear that a minority of jurisdictions employ a zone of danger test to begin with; the Supreme Court in Gottshall noted that only fourteen jurisdictions have adopted some version of the test. It is true that a few courts have allowed NIED claims by plaintiffs who have experienced fear for their own physical safety, without regard to whether they were concurrently forced to witness injury to another. See, e.g., Wall v. Fairview Hosp. and Healthcare Servs., 584 N.W.2d 395, 408 (Minn. 1998) ("To establish a claim for negligent infliction of emotional distress, a plaintiff must show that she was within a zone of danger of physical impact, reasonably feared for her safety, and suffered severe emotional distress with accompanying physical manifestations."); Hutton v. Norwegian Cruise Line Ltd., 144 F. Supp. 2d 1325, 1327 (S.D. Fla. 2001) (applying the Gottshall formula to a maritime NIED claim). However, the more common approach among courts that have applied a zone of danger theory is to impose a "witnessed harm" requirement. See generally Dale Joseph Gilsinger, Recovery Under State Law for Negligent Infliction of Emotional Distress due to Witnessing Injury to Another Where Bystander Plaintiff Must Suffer Physical Impact or Be in Zone of Danger, 89 A.L.R.5th 255 (2001).

The Court concludes that, because very few jurisdictions employ a zone of danger test that lacks a "witnessed harm" requirement, even if a maritime NIED claim may be brought under a zone of danger theory, the claim must be premised on the plaintiff's having experienced a "psychic injury" by "witnessing another being seriously injured or killed," Chan, 39 F.3d at 1408

8

1  (emphasis omitted), while simultaneously being threatened with
2  physical injury him or herself.  The Court will thus evaluate
3  Plaintiff's allegation of NIED under <u>Chan</u>'s formulation of the zone
4  of danger test.

5       Although Plaintiff alleges that he was threatened with
6  physical harm as a consequence of Defendants' negligence, he does
7  not allege that he witnessed the collision between the Eva
8  Danielsen and the Buona Madre.  The complaint implies that
9  Plaintiff learned of a possible collision only after the fact, and
10 did not learn that anyone had been injured or killed until several
11 days later.  Because Plaintiff did not experience a psychic injury
12 by witnessing Mr. Wade's death, there is no basis for imposing
13 liability on Defendants.

14      Plaintiff notes that <u>Chan</u>'s formulation of the zone of danger
15 theory allows recovery by someone who has witnessed harm <u>or</u> "peril"
16 to another.  However, the parties have not cited any case that
17 addresses a claim based on witnessing "peril" that did not
18 ultimately result in harm.  Even accepting the proposition that a
19 claim can be founded on nothing more than witnessing another person
20 be exposed to the possibility of injury, Plaintiff did not witness
21 Mr. Wade face the peril created by the Eva Danielsen.  The Court
22 rejects the argument that an NIED claim can be based on Plaintiff's
23 general awareness that there were other fishing boats near him at
24 the time the Eva Danielsen passed through.  Having a suspicion that
25 someone nearby is being exposed to danger is not tantamount to
26 witnessing injury or death, and Plaintiff has cited no case
27 imposing liability for NIED under comparable circumstances.

28      Because Plaintiff has not stated an NIED claim under any of

*United States District Court*
*For the Northern District of California*

9

1  the three tests identified in <u>Chan</u>, his claim is dismissed.

## CONCLUSION

For the foregoing reasons, the motion to dismiss (Docket No. 11 in Case No. 08-3586) is GRANTED.  Plaintiff Brian Stacy's sole claim against Defendants Rederiet Otto Danielsen and K/S Aries Shipping is dismissed.  Because Plaintiff's claim against Defendant Marinconsult Ship Management is based on the same facts and legal theory as his claim against the moving Defendants, his claim against Marinconsult Ship Management is dismissed as well.  <u>See</u> <u>Silverton v. Dep't of Treasury</u>, 644 F.2d 1341, 1345 (9th Cir. 1981) ("A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related.")

Plaintiff is given leave to amend the complaint to allege, if he can truthfully do so, that he witnessed the collision between the Eva Danielsen and the Buona Madre and was contemporaneously aware that Mr. Wade had been harmed by the collision.  Any second amended complaint is due within ten days of the date of this order.  If no second amended complaint is filed, the complaint will be dismissed with prejudice.

IT IS SO ORDERED.

Dated: 1/15/09

_____
CLAUDIA WILKEN
United States District Judge